# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | | |
|---|---|---|
| PIONEER WEALTH MANAGEMENT GROUP, INC., <br>    Plaintiff, <br><br> vs. <br><br> PIONEER BANCSHARES, INC., PIONEER BANK, SSB d/b/a PIONEER WEALTH SOLUTIONS, AMY LYNN COLTON, ERIC J. NEGRON, and IRMA LINCOLN HAMPTON, <br>    Defendants. | § § § § § § § § § § § § § | Civil Action No. 1:16-cv-00833 |

## PLAINTIFF'S ORIGINAL COMPLAINT

TO THE HONORABLE UNITED STATES DISTRICT COURT:

Plaintiff, Pioneer Wealth Management Group, Inc., hereby files this original complaint, alleging both federal and state causes of action for service mark and trade name infringement against Defendants, Pioneer Bancshares, Inc., Pioneer Bank, SSB d/b/a Pioneer Wealth Solutions, Amy Lynn Colton, Eric J. Negron, and Irma Lincoln Hampton, as follows:

## I.  Parties

1. Plaintiff, Pioneer Wealth Management Group, Inc. ("Plaintiff"), is a for-profit corporation organized under the laws of the State of Texas in 2006[1] with its principal place of business in Austin, Texas, at 700 Lavaca St., 14th Floor. Plaintiff is a registered investment advisor (RIA) registered with the Texas State Securities Board and the Financial Industry Regulatory Authority (FINRA).

2. Defendant, Pioneer Bancshares, Inc., is a bank holding company organized and existing under the laws of the State of Texas with its principal place of business in Dripping Springs, Texas, at 100 Creek Road.  Pioneer Bancshares, Inc. owns one hundred percent of the shares of Pioneer Bank, SSB.

3. Defendant Pioneer Bank, SSB is a state savings bank organized and existing under the laws of the State of Texas with its principal place of business in Dripping Springs, Texas, at 100 Creek Road.  Pioneer Bank, SSB is a wholly-owned subsidiary of Pioneer Bancshares, Inc. and operates a division under the assumed name "Pioneer Wealth Solutions."

---

[1] Pioneer Wealth Management Group, Inc. was formed on November 9, 2006.  Prior to that date, "Pioneer Wealth Management Group" was an assumed name of Cypress Wealth Management Group, LLC.  Cypress Wealth Management Group, LLC was formed on October 18, 2004 and its assumed name, "Pioneer Wealth Management Group," was granted the very next day, on October 19, 2004.  Cypress Wealth Management Group, LLC did business as "Pioneer Wealth Management Group" from October 19, 2004 until November 9, 2006, when Cypress Wealth Management Group, LLC converted into its present corporate form.

Plaintiff Pioneer Wealth Management Group's
Original Complaint

4. Defendant, Amy Lynn Colton, is an individual and Investment Advisor Representative (IAR) doing business as Pioneer Wealth Solutions with her principal place of business in Dripping Springs, Texas, at 100 Creek Road.

5. Defendant, Eric J. Negron, is an individual and Investment Advisor Representative (IAR) doing business as Pioneer Wealth Solutions with his principal place of business in Dripping Springs, Texas, at 100 Creek Road.

6. Defendant, Irma Lincoln Hampton, is an individual and Investment Advisor Representative (IAR) doing business as Pioneer Wealth Solutions with her principal place of business in Dripping Springs, Texas, at 100 Creek Road.

## II.   Jurisdiction and Venue

7. This action arises under the Lanham Trademark Act, 15 U.S.C. §§ 1051–1127, and this Court has original jurisdiction based upon 15 U.S.C. § 1121 and 28 U.S.C. § 1338, as well as supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367.  Venue in this district is proper under 28 U.S.C. § 1391(b).

## III.   Factual Background

**A. Unregistered Service Mark: PIONEER**

8. Plaintiff has provided financial advisory and wealth management services affecting interstate commerce from its headquarters in downtown Austin, Texas, under the service mark "PIONEER" since 2004.  Plaintiff has offices in

Austin and Dallas, and provides its PIONEER-branded services to customers located throughout Texas, as well as in California, Colorado, Illinois, New Jersey, New York, Pennsylvania, and Washington, DC.

9. Plaintiff has advertised its PIONEER-branded services extensively in numerous print, radio, and Internet media in Texas and nationally, including, but not limited to, Austin Radio Network's FM radio stations, the Austin Business Journal, the Austin Independent Business Alliance, Texas Monthly, the University of Texas Alcalde, the National Association of Personal Financial Advisors, Google, and Facebook from 2004 to the present. Additionally, Plaintiff maintains a professional webpage at *www.pioneerwealth.com*, which is accessible throughout the United States. Plaintiff has also advertised its services under the PIONEER mark through promotional materials such as mugs, t-shirts, Snuggies, and banners.

10. In print media, Plaintiff uses the following logo, which prominently displays the term "Pioneer" as the identifier of its services:



11. Plaintiff has engaged in community outreach extensively in Austin and Dallas since 2004 under the PIONEER mark. Plaintiff's outreach includes

Plaintiff Pioneer Wealth Management Group's
Original Complaint

sponsoring charitable organizations and events in Austin and Dallas, including Mission Capital, Austin Under Forty, Any Baby Can, Austin Young Chamber, Young Women's Alliance, Young Men's Business League, Downtown Austin Neighborhood Association, Big Brothers Big Sisters, Please Be Kind to Cyclists, Social Venture Partners- Dallas, Khabele School, Austin Discovery School, and Ronald McDonald House Charities of Central Texas, among others.  These charitable activities have accrued substantial goodwill in Plaintiff's mark.

12. Plaintiff's advertising, community outreach, and rendition of high-quality services under the mark PIONEER have caused this mark to become, through widespread and favorable public acceptance and recognition, an asset of substantial value as a symbol of Plaintiff's quality services and goodwill.

13. When used in connection with financial advisory and wealth management services, the term "Pioneer" is arbitrary, making Plaintiff's mark PIONEER inherently distinctive for those services.

14. Alternatively, when used in connection with financial advisory and wealth management services, the term "Pioneer" is suggestive, making Plaintiff's mark PIONEER inherently distinctive for those services.

Plaintiff Pioneer Wealth Management Group's
Original Complaint

## B. Trade Name: PIONEER WEALTH MANAGEMENT GROUP

15. Plaintiff has been continuously referred to and known by its trade name, PIONEER WEALTH MANAGEMENT GROUP, since its inception in 2004.

16. Plaintiff has provided wealth management and financial advisory services in interstate commerce under the trade name PIONEER WEALTH MANAGEMENT GROUP continuously since 2004 to clients located in Texas, California, Colorado, Illinois, New Jersey, New York, Pennsylvania, and Washington, DC.

17. Plaintiff has advertised its name extensively in numerous print, radio, and Internet media in Texas and nationally, including but not limited to, Austin Radio Network's FM radio stations, the Austin Business Journal, the Austin Independent Business Alliance, Texas Monthly, the University of Texas Alcalde, the National Association of Personal Financial Planners, and Facebook from 2004 to the present. Additionally, Plaintiff maintains a professional webpage at *www.pioneerwealth.com*, which is accessible throughout the United States.

18. Since its inception, Plaintiff has spent over $38,000 in advertising, the vast majority of which was spent in the last five years.

19. Plaintiff has engaged in community outreach extensively in Austin and Dallas since 2004 under the trade name PIONEER WEALTH

MANAGEMENT GROUP.  Plaintiff's outreach includes sponsoring innumerable charitable organizations and events in Texas, including Mission Capital, Austin Under Forty, Any Baby Can, Austin Young Chamber, Young Women's Alliance, Young Men's Business League, Downtown Austin Neighborhood Association, Big Brothers Big Sisters, Please Be Kind to Cyclists, Social Venture Partners- Dallas, Khabele School, Austin Discovery School, and Ronald McDonald House Charities of Central Texas, among others.  These charitable activities have accrued substantial goodwill in Plaintiff's trade name.

20. Plaintiff's advertising, community outreach, and rendition of high-quality services under the trade name PIONEER WEALTH MANAGEMENT GROUP have caused that name to become, through widespread and favorable public acceptance and recognition, an asset of substantial value as a symbol of Plaintiff and its goodwill.

21. When used in connection with financial advisory and wealth management services, the term "Pioneer" is arbitrary, making Plaintiff's trade name PIONEER WEALTH MANAGEMENT GROUP inherently distinctive.

22. Alternatively, when used in connection with financial advisory and wealth management services, the term "Pioneer" is suggestive, making Plaintiff's trade name PIONEER WEALTH MANAGEMENT GROUP inherently distinctive.

**C. Plaintiff's Quality Services**

23. Plaintiff is not a commission-based advisory service. Plaintiff is a registered investment advisory firm that provides investment and wealth management services for a fee. In other words, Plaintiff does not receive a commission on any securities or other products that it advises its clients to purchase. This method allows Plaintiff to adhere to the strictest fiduciary duty to its clients.

24. Plaintiff utilizes this method of compensation because it offers a greater value to its clients by avoiding the conflict of interest that is inherent in a business model in which financial advisors receive commissions on the products they advise their clients to purchase.

25. Plaintiff promotes the superiority of its business model from the client's perspective in its advertising and distinguishes its PIONEER-branded services on that basis.

**D. Defendants' Actions**

26. Defendant Pioneer Bancshares, Inc. was formed on or about March 19, 2013.

27. Defendant Pioneer Bank, SSB was formed in 2013.

28. Defendant Pioneer Bank, SSB filed an assumed name certificate on or about May 7, 2014 in Hays County, Texas stating that it would be doing business

under the assumed name "Pioneer Wealth Solutions." (Pioneer Bancshares, Inc. and Pioneer Bank, SSB d/b/a Pioneer Wealth Solutions are referred to collectively herein as the "Bank Defendants").

29.     Despite Plaintiff's well-known and prior common law rights in its service mark and trade name, on June 27, 2014, the Bank Defendants issued a press release announcing that they planned to offer wealth management and financial advisory services in the Central Texas area under the name "Pioneer Wealth Solutions."

30.     At the time Bank Defendants began using the terms "Pioneer" and "Pioneer Wealth," Plaintiff believes that the evidence will show that Defendants were aware of Plaintiff's business and that the term "Pioneer" was the crucial, distinctive component of its service mark and trade name.

31.     Plaintiff did not discover Bank Defendants' plan to compete with it using "Pioneer", the crucial, distinctive component of its own service mark and trade name, until early in 2015, when *one of Pioneer Bancshares, Inc.'s own investors confused Pioneer Wealth Solutions with Pioneer Wealth Management Group* in a conversation with Pioneer Wealth Management Group's principal, Milad Taghehchian.

32. Defendant Amy Lynn Colton is presently offering financial advisory and wealth management services under the name "Pioneer Wealth Solutions" in the central Texas area.

33. Defendant Amy Lynn Colton markets and advertises her services as "Pioneer Wealth Solutions" via eWomen Network Austin, Business Network International (BNI), and via social media, including LinkedIn and Facebook.

34. Defendant Eric J. Negron is presently offering financial advisory and wealth management services under the name "Pioneer Wealth Solutions" in the central Texas area.

35. Defendant Eric J. Negron markets and advertises his services as "Pioneer Wealth Solutions" via social media, including LinkedIn and Twitter.

36. Defendant Irma Lincoln Hampton is presently offering financial advisory and wealth management services under the name "Pioneer Wealth Solutions" in the central Texas area.

37. Defendant Irma Lincoln Hampton markets advertises her services as "Pioneer Wealth Solutions" via the American Heart Association's "Go Red for Women" Photo Campaign, where her name, photo, and affiliation with "Pioneer Wealth Solutions" were published in Austin Woman Magazine. (Defendants Amy Lynn Colton, Eric J. Negron, Irma Lincoln Hampton and the Bank Defendants are referred to collectively herein as "Defendants").

38. Unlike Plaintiff, Defendants sell commissioned products, creating the very conflict of interest Plaintiff specifically designed its business model to avoid. Defendants owe no fiduciary duty to their clients.

39. Further, Defendants do not have an established name, brand, or web platform, and they do not have a principal office in downtown Austin, much less a second office in Dallas. The confusion that Defendants have created by using the name Pioneer Wealth Solutions, however, certainly makes it appear that they have all of these things. This confusion, combined with Defendants' inferior business model, is presently damaging Plaintiff's brand and reputation.

40. Upon discovering Defendants' plans, Plaintiff immediately contacted the Bank Defendants and requested that they cease and desist using the term "Pioneer" to offer competing services to avoid creating confusion in the marketplace for financial advisory and wealth management services. The Bank Defendants ultimately refused, leaving Plaintiff no choice but to file the instant suit to protect the goodwill it has created and meticulously cultivated under its service mark and trade name.

41. Defendants now offer competing wealth management and financial advisory services using the name "Pioneer."

42. Since Defendants began offering competing services, their unauthorized use of the term "Pioneer" in marketing their services has created

actual confusion in the marketplace for financial advisory and wealth management services. Several of Defendants' customers or potential customers have mistakenly contacted Plaintiff and Plaintiff believes the evidence will show that several of Plaintiff's prospective clients have mistakenly contacted Defendants. Further, as previously noted, one of Pioneer Bancshares, Inc.'s investors—who theoretically should be among those best positioned to know the difference between the two entities—confused Pioneer Wealth Solutions with Pioneer Wealth Management Group.

43. Plaintiff believes the evidence will show that Defendants have profited off of Plaintiff's goodwill by their unauthorized use of the term "Pioneer" for competing services.

44. Plaintiff believes the evidence will show that Defendants have deprived Plaintiff of business and revenue through the confusion created by its use of the term "Pioneer."

### IV. Causes of Action

**A. Federal Service Mark and Trade Name Infringement**

45. Plaintiff re-alleges Paragraphs 1–44 as if fully set forth herein.

46. Plaintiff is the senior user of the unregistered service mark PIONEER for wealth management and financial advisory services.

47. Additionally, Plaintiff is the senior user of the trade name PIONEER WEALTH MANAGEMENT GROUP for a business providing wealth management and financial advisory services in Texas and all other states in which it has clients.

48. Defendants use the term "Pioneer" in commerce in connection with wealth management and financial advisory services in the same market Plaintiff serves.

49. Defendants use the name "Pioneer Wealth" in the same market Plaintiff serves under the name PIONEER WEALTH MANAGEMENT GROUP.

50. Defendants' use of the term "Pioneer" is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Defendants' services with Plaintiff, or as to the origin, sponsorship, or approval of Defendants' services or commercial activities by Plaintiff. Indeed, such confusion, mistakes, and deception have already occurred.

51. The confusion, mistakes, and deception Defendants have created through their unauthorized use of the term "Pioneer" have caused irreparable injury to Plaintiff by damaging its business's goodwill and will continue to cause further irreparable injury if Defendants are not restrained by this Court from further violation of Plaintiff's rights. Plaintiff has no adequate remedy at law for these intangible harms and seeks equitable relief for them.

52. Additionally, Defendants' actions have damaged Plaintiff financially by causing it to lose business revenues due the confusion Defendants have created in the marketplace for its services. Plaintiff seeks recovery of these damages at law, as well as recovery of Defendants' profits from its infringement and damages for corrective advertising.

53. The foregoing constitutes service mark infringement and trade name infringement under Section 43(a) of the Lanham Trademark Act, 15 U.S.C. § 1125(a), entitling Plaintiff to both injunctive relief and damages.

**B. Texas Common Law Service Mark and Trade Name Infringement**

54. Plaintiff re-alleges Paragraphs 1–53 as if fully set forth herein.

55. Plaintiff's mark PIONEER is eligible for protection due to its inherent distinctiveness when used in connection with wealth management and financial advisory services.

56. Additionally, Plaintiff's trade name PIONEER WEALTH MANAGEMENT GROUP is eligible for protection due to its inherent distinctiveness when used in connection with Plaintiff's wealth management and financial advisory business.

57. By using the term "Pioneer" in connection with the marketing of their competing services in the same market Plaintiff serves, Defendants are creating a likelihood of confusion as to the source or origin of their services.

58. Defendants' use of the name "Pioneer" and "Pioneer Wealth" in connection with their financial advisory and wealth management business further creates a likelihood of confusion between its name and Plaintiff's name.

59. The confusion Defendants have created through their unauthorized use of the term "Pioneer" has caused irreparable injury to Plaintiff by damaging its business's goodwill and will continue to cause further irreparable injury if Defendants are not restrained by this Court from further violation of Plaintiff's rights. Plaintiff has no adequate remedy at law for these intangible harms and seeks equitable relief for them.

60. Additionally, Defendants' actions have damaged Plaintiff financially by causing it to lose business revenues due the confusion Defendants have created in the marketplace for its services. Plaintiff seeks recovery of these damages at law, as well as recovery of Defendants' profits from its infringement and damages for corrective advertising.

61. The foregoing constitutes unfair competition under Texas common law, entitling Plaintiff to both injunctive relief and damages. *See Amazing Spaces, Inc. v. Metro Mini Storage*, 608 F.3d 225, 235 n.7 (5th Cir. 2010).

## V. Demand for a Jury Trial

62. Plaintiff asserts its rights under the Seventh Amendment to the United States Constitution and demands, in accordance with Rule 38 of the Federal Rules

of Civil Procedure, a trial by jury on its claims at law for damages under Section 43(a) of the Lanham Act and Texas common law.

## VI.  Prayer

WHEREFORE, Plaintiffs respectfully request that this Court render judgment:

a. That Defendants, their officers, agents, servants, employees, attorneys, and all those persons in active concert or participation with them be forthwith preliminarily and thereafter permanently enjoined and restrained from:

   i. Using the term "Pioneer" or any confusingly similar designation, alone or in combination with other words, as a trademark, trade name component, or otherwise, to market, advertise, or identify Defendants' financial advisory or wealth management services or related services;

   ii. Otherwise infringing Plaintiff's mark;

   iii. Unfairly competing with Plaintiff in any manner whatsoever; and

   iv. Causing likelihood of confusion, injury to business reputation or goodwill of Plaintiff's marks, symbols, labels, or forms of advertisement.

b. That Defendants be directed to file with this Court and serve on Plaintiff within thirty days after the service of an injunction, a report in writing under oath setting forth in detail the manner and form in which Defendants have complied with the injunction;

c. That Defendants be required to deliver up and destroy all devices, literature, advertising, and other material bearing the infringing designation;

    d. That Plaintiff be awarded Defendants' trademark infringement profits after an accounting;

    e. That Plaintiff recover damages not exceeding three times the damages caused by Defendants' unfair competition, as measured by its lost profits and the need for corrective advertising in the market for its services;

    f. That Plaintiff have and recover costs in this suit; and

    g. That Plaintiff be awarded such other and further relief as the Court may deem just.

Respectfully submitted,

Date: July 1, 2016      By:   /s/ John H. H. Bennett

**JOHN H.H. BENNETT**
Texas State Bar No. 24069369
*johnhhbennett@gmail.com*
1807 Poquito St., #41
Austin, TX 78702
Tel.: (512) 731-5117

**STACIE L. BENNETT**
Texas State Bar No. 24076984
*stacielbennett@gmail.com*
11140 Pinehurst Dr.
Austin, TX 78747
Tel.: (512) 633-3766

ATTORNEYS FOR PLAINTIFF
PIONEER WEALTH
MANAGEMENT GROUP, INC.